IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MIGUEL ANGEL LUNA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-3520-D |
| VS. | § | |
| | § | |
| LUPE VALDEZ, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

This is an action under 42 U.S.C. § 1983 by Miguel Angel Luna ("Luna"), a Mexican

citizen, who alleges that his constitutional rights were violated when, following his arrest for

a misdemeanor offense, he was denied pretrial release due to a U.S. Department of Homeland

Security ("DHS") immigration detainer; he was detained based on the immigration detainer

for up to 48 hours after he pleaded guilty to the misdemeanor offense; and he was

subsequently detained for several months because his name was omitted from a list of

prisoners to be released or transferred to immigration custody. Defendants Dallas County

(the "County") and its then-sheriff, Lupe Valdez ("Sheriff Valdez"), move for summary

judgment. For the reasons that follow, the court concludes that Sheriff Valdez is entitled to

qualified immunity as to all claims asserted against her, and that Dallas County is entitled to

summary judgment as to all of Luna's claims except his Fourth Amendment claim that, due

to an immigration detainer, he was denied release on bail from April 11 through April 27,

2015 while awaiting trial, and he was detained for up to 48 hours after he pleaded guilty on

April 27, 2015. The court dismisses Luna's action against Sheriff Valdez by Fed. R. Civ. P. 54(b) final judgment filed today.

I

On April 11, 2015 Luna was booked into the Dallas County Jail (the "Jail") on a misdemeanor charge of "display fictitious license plate."[1] That same day, the DHS[2] lodged an "Immigration Detainer - Notice of Action" ("Immigration Detainer"), stating that it had "[d]etermined that there is reason to believe [that Luna] is an alien subject to removal from the United States," and requesting that the recipient law enforcement agency[3] "[m]aintain custody of [Luna] for a period <u>NOT TO EXCEED 48 HOURS</u>, excluding Saturdays, Sundays, and holidays, beyond the time when [he] would have otherwise been released from . . . custody to allow DHS to take custody of [him]." Ds. App. 5 (bold font omitted). During the evening of April 11, 2015, Luna was arraigned and his bond was set at $2,500. Luna does not contend that he posted or attempted to post bond to secure his release. He maintains

---

[1]In deciding defendants' summary judgment motion, the court views the evidence in the light most favorable to Luna as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]The Immigration Detainer filed against Luna appears to have been issued by DHS. In their briefs, however, the parties refer, apparently interchangeably, to DHS, U.S. Immigrations and Customs Enforcement ("ICE"), an agency of DHS, and the former U.S. Immigration and Naturalization Service, most of the functions of which are now performed by components of DHS, including ICE.

[3]The Immigration Detainer was addressed to the Carrollton, Texas Police Department "OR Any Subsequent Law Enforcement Agency[.]" Ds. App. 5.

instead that doing so would have been futile considering defendants' policy of not allowing any release on bond for inmates against whom an immigration detainer had been filed.

On April 27, 2015 Luna pleaded *nolo contendere* to the charges against him and was sentenced to time served. His state criminal charges were disposed of and he was to be discharged, subject to the Immigration Detainer lodged against him. An email sent at 6:30 a.m. on April 28, 2015 contained a document entitled "INS Holds Pending Release" that listed Luna as ready for release to "U.S. Immigration/Detainee" as of April 27, 2015. Later that morning, however, a clerk in the Data Management Unit ("DMU") sent to various U.S. Immigrations and Customs Enforcement ("ICE") and DHS personnel a list of Dallas County inmates who, on April 29, 2015, would be ready for transfer to U.S. immigration officials, and Luna's name was omitted from the list. Consequently, Luna was neither released nor transferred.

According to Luna, he was forced during his confinement to work without pay and he was subjected to filthy, unsanitary conditions that included being forced to clean up human waste without proper clothing and being fed food that had gone bad, continuously making him ill. Luna contends that, during his confinement, he asked no fewer than five detention officers on at least twelve occasions when he would be released, but the detention officers were either unresponsive or told him he was being held because of an immigration detainer. When on several occasions he requested a "kite" to bring the issue to the attention of a Jail supervisor, his requests were denied.

On August 6, 2015 Luna filed an expedited petition for writ of habeas corpus in

federal district court. The following day, Luna was released when it became apparent to the appropriate Jail authorities that he should have been discharged on April 27, 2015. Luna then filed this lawsuit against the County and Sheriff Valdez, alleging claims under 42 U.S.C. § 1983 for deprivations of his Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendment rights. Defendants move for summary judgment on all of Luna's claims.[4] Luna opposes the motion.

## II

Defendants move for summary judgment on claims for which Luna will have the burden of proof at trial. Because Luna will have the burden of proof, defendants' burden at the summary judgment stage is to point the court to the absence of evidence of any essential element of Luna's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once they do so, Luna must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*,

---

[4]Defendants filed their motion for summary judgment on October 11, 2016. Shortly thereafter, the court granted the parties' agreed motion to stay. On December 26, 2016 defendants filed an offer of judgment under Rule 68. In a July 7, 2017 status report, the parties requested that the court lift the stay and re-establish deadlines for the remaining items on the court's previous scheduling order. On July 13, 2017 the court reset the trial of this case to the two-week docket of February 20, 2018 (it reset the trial on January 23, 2018 to the two-week docket of August 6, 2018). On October 13, 2017 Luna filed his response to defendants' motion for summary judgment, and on October 31, 2017 defendants filed their reply. The motion is now ripe for decision.

477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

These summary judgment standards apply as well to Sheriff Valdez's defense of qualified immunity. Although qualified immunity is an affirmative defense, the burden is on the plaintiff to establish that the defendant is not protected because the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005) (addressing qualified immunity). To prevail, the plaintiff must show "genuine issues of material fact [exist] concerning the reasonableness" of the defendant's conduct. *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001). "Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

III

"Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 504 n.2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)). "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris Cnty. Flood Control Dist.*,

869 F.2d 1565, 1573 (5th Cir. 1989)).

Before the court considers whether the County or Sheriff Valdez can be held liable under § 1983 for violating Luna's constitutional rights, the court turns to defendants' contention that Luna cannot prove a deprivation of his Fourth, Fifth, Eighth, or Fourteenth Amendment rights.[5]

A

The court begins with Luna's Fourth Amendment claim.

1

Defendants contend that, to recover on his Fourth Amendment-based claim, Luna must prove that he posted bail, or was otherwise eligible for release, but he was detained solely because of an ICE-issued request to detain; that there is no evidence that Luna, or anyone on his behalf, posted bond in the amount required for him to be eligible for release; that without that proof, Luna did not have a right to be released, regardless of the existence (or not) of an immigration detainer; and that the only inference that can be reasonably drawn is that Luna was held because of his failure to post bond, not because of an immigration detainer lodged against him.

Luna responds that the evidence demonstrates that defendants unlawfully detained him (1) during his pretrial period from April 11, 2015 through April 27, 2015 by refusing to

---

[5]Defendants also move for summary judgment on Luna's Thirteenth Amendment-based claim on the ground that he cannot show that his work as a Jail trusty was compelled. Because the court concludes below that this claim fails for other reasons, *see infra* §§ IV(C) and V(C)-(D), it does not address this ground of defendants' motion.

release him on bail due to the Immigration Detainer and (2) well beyond his court-adjudicated release date (April 27, 2015) without probable cause to believe he had committed another criminal offense. Regarding his failure to post bond, Luna contends that it would have been futile to attempt to post bail during the pretrial detention period because of defendants' policy of not allowing inmates with immigration detainers to be released on bail.

2

Under the Fourth Amendment,[6] "a fair and reliable determination of probable cause" must be provided "as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979) (citation omitted); *see also Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("[W]e hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."). The Supreme Court has defined "probable cause" as "facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Gerstein*, 420 U.S. at 111-12 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause exists if, under the totality of circumstances, there is a fair probability that . . . an illegal act is taking place." *United States v. Thompson*, 2012 WL 1161609, at *3 (N.D. Tex. Apr. 9, 2012) (Fitzwater, C.J.) (citing *United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir. 2006)).

---

[6]The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated [.]" U.S. Const. amend. IV.

To the extent Luna's Fourth Amendment claim rests on defendants' alleged failure to permit him to secure his pretrial release by posting bail, i.e., from April 11 through April 27, 2015,[7] Luna has created a genuine issue of material fact sufficient to survive summary judgment.[8] Although defendants contend that Luna "does not offer any legal authority supporting the premise that being denied bail within the first 48 hours of his detention rises to the level of a constitutional violation,"[9] Ds. Reply Br. 6, they appear to concede that Luna can establish a Fourth Amendment violation by proving that he posted bail or was otherwise eligible for release but was detained solely because of the Immigration Detainer. *See* Ds. Br.

---

[7]To the extent Luna bases his Fourth Amendment claim on his continued detention once he was eligible for release following sentencing, i.e., after April 27, 2015, *see* Compl. ¶ 41 ("Defendants detained, arrested, and seized Plaintiff after the completion of his sentence without probable cause or without warrant as required by the Fourth Amendment[.]"), the court holds for the reasons explained below that he cannot recover on this claim against Sheriff Valdez, *see infra* §§ V(C)-(D), and that he cannot recover against Dallas County to the extent this claim is based on his continued detention as a result of the DMU's clerical mistake, *see infra* § IV(B).

[8]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

[9]"[T]here is no absolute constitutional right to bail." *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003). The Fourth Amendment generally requires a judicial determination of probable cause within 48 hours of a warrantless arrest. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *White v. Taylor*, 959 F.2d 539, 546 (5th Cir. 1992). But this 48-hour safe harbor is not absolute. Probable cause determinations that take place within the 48-hour time frame might still violate the Fourth Amendment if the arrestee can show that the probable cause determination was "delayed unreasonably." *Cnty. of Riverside*, 500 U.S. at 56.

5-6 ("To state a violation of the Fourth Amendment in this context, Luna must prove he paid bail or was other[wise] eligible for release, but was detained solely because of an ICE-issued request to detain.").  Luna has adduced evidence that would enable a reasonable jury to find that, even if he had posted bond in the requisite amount, he would have been denied release because of the Immigration Detainer.[10]  *See* P. App. 8 (deposition of Assistant Chief Jason Hartgraves ("Chief Hartgraves"), in which he testified that, if a person attempted to post bond for a detainee with a "No bond allowed" notation on his immigration detainer, the person attempting to post bond would be notified that there was an ICE hold and the detainee would not be released).  This court has held when addressing an issue of standing that the plaintiffs' allegation that "Dallas County's well-known practice of refusing immediate release on bond for any detainee with an immigration hold made it futile for the plaintiffs who were the subject of these immigration holds to post bond." *Mercado v. Dallas Cnty., Tex.*, 229 F.Supp.3d 501, 508 (N.D. Tex. 2017) (Fitzwater, J.) ("*Mercado II*").  The court therefore concludes that, because there is a genuine issue of material fact whether it would have been futile for Luna to attempt to post bond in the requisite amount, defendant's motion for summary judgment on this ground must be denied.[11]

---

[10]In their reply, defendants contend that Luna has failed to adduce evidence that *he believed* it would have been futile to attempt to post bail.  Defendants fail to cite any authority, however, for the proposition that a plaintiff must prove that *he subjectively believed* his attempt to secure release on bail would have been futile (as opposed to proving the fact of futility through other evidence).

[11]Because the issue has not been adequately briefed, the court does not address whether any portion of the time that Luna was detained before his April 27, 2015 guilty plea

B

Defendants maintain that they are entitled to summary judgment on Luna's Fifth Amendment claim because the Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor and Luna has not alleged that defendants or their employees were acting under authority of the federal government. Luna responds, *inter alia*, that he has alleged, and that the evidence overwhelmingly demonstrates, that defendants were acting under the authority of the federal government when they unlawfully seized and wrongfully detained him pursuant to an immigration detainer issued by the federal government.

Luna does not include a distinct Fifth Amendment-based § 1983 claim in his complaint. He does, however, refer to his Fifth Amendment due process rights in ¶ 19 of the complaint. Assuming *arguendo* that Luna intended to plead a Fifth Amendment-based § 1983 claim, the court holds that defendants are entitled to summary judgment. "[T]he due process component of the Fifth Amendment applies only to federal actors," *Blackburn v. City of Marshall*, 42 F.3d 925, 930 n.3 (5th Cir. 1995), and Luna has neither pleaded nor adduced evidence of any constitutional violation by a federal actor. The court therefore dismisses Luna's Fifth Amendment-based § 1983 claim to the extent he asserts such a claim.

---

was constitutionally permissible under *County of Riverside*, 500 U.S. at 56. *See supra* n.9.

C

The court now turns to Luna's Eighth Amendment-based § 1983 claim.

1

Defendants maintain that Luna cannot prove an Eighth Amendment violation because the Eighth Amendment's "Cruel and Unusual Punishments" clause is directed at the *method or kind of punishment* imposed, and Luna's complaint is about the *fact of incarceration*, rather than its conditions.

Luna responds that a genuine issue of material fact precludes summary judgment on his Eighth Amendment claim because the evidence demonstrates that he was wrongfully incarcerated for 102 days, which was grossly disproportionate to the misdemeanor violation for which he was sentenced to time served (i.e., just nine days); Jail personnel repeatedly and consistently responded with deliberate indifference to his complaints that he should no longer be incarcerated; he was subjected to filthy, unsanitary conditions during his wrongful incarceration, including being forced to clean up human waste without proper clothing and constantly being fed food that had gone bad, continuously making him ill; and on several occasions he requested a "kite" to bring the issue of his incarceration to the attention of a Jail supervisor but his requests were repeatedly denied.

Defendants reply, *inter alia*, that Luna has challenged the conditions of confinement for the first time in his response to their motion for summary judgment but has not properly alleged a conditions of confinement claim.

The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition extends to deprivations suffered during imprisonment. *See Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016). To establish a violation of the Eighth Amendment, Luna must first show that his confinement resulted in a deprivation that was "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation and citation omitted). It is well settled that "the Constitution does not mandate comfortable prisons" and that prison conditions may be "restrictive and even harsh" without running afoul of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981); *see also id.* at 347 (noting that such conditions are "part of the penalty that criminal offenders pay for their offenses against society"). Nonetheless, conditions may not be "grossly disproportionate to the severity of the crime warranting imprisonment." *Id.* at 347. The Supreme Court has defined a "sufficiently serious" deprivation under the Eighth Amendment as the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347).

Assuming that Luna can show a sufficiently serious deprivation, he also must prove that prison officials acted with "deliberate indifference" to his health or safety. *Id.* This follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (citation omitted); *see also id.* at 837 ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"). A prison official acts with deliberate indifference "only if he knows that

inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. This knowledge requirement is subjective: the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

3

Luna alleges in his complaint that his continued incarceration "after having served his sentence, was cruel and unusual punishment in violation of the Eighth Amendment." Compl. ¶ 21; *see also id.* ¶ 43 ("The incarceration of [Luna] after having served his sentence, pursuant to the policy, practice or custom of Defendants as described in the preceding paragraphs, was cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution."). It is clearly established, however, that a § 1983 civil rights action is not the appropriate means to challenge the fact or duration of confinement. *See Jackson v. Johnson*, 475 F.3d 261, 263 n.2 (5th Cir. 2007) ("A prisoner may file a § 1983 action to challenge the conditions of confinement, whereas a challenge to the fact of confinement is properly presented in a habeas petition." (citation omitted)); *see also Cook v. Tex. Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994) ("The core issue in determining whether a prisoner must pursue habeas corpus relief rather than a civil rights action is to determine whether the prisoner challenges the 'fact or duration' of his confinement or merely the rules, customs, and procedures affecting 'conditions' of confinement."). "The primary purpose of [the Cruel and Unusual Punishments Clause] has always been considered . . . to be directed at the method or kind of

punishment imposed for the violation of criminal statutes." *Ingraham v. Wright*, 430 U.S. 651, 667 (1977) (quoting *Powell v. Texas*, 392 U.S. 514, 531-532 (1968)).  Accordingly, to the extent Luna bases his Eighth Amendment claim on the fact that he was "wrongfully incarcerated for 102 days," P. Br. 8, the court grants defendants' motion for summary judgment on this claim.  *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) ("Jones, complaining about the fact of his incarceration rather than its conditions, fails to state a cause of action under the Eighth Amendment."); *see also Erickson v. Smith Cnty., Tex.*, 2007 WL 2907823, at *7 (E.D. Tex. Oct. 1, 2007) (rejecting plaintiff's argument that keeping her in custody beyond her release date violated her Eighth Amendment rights); *Nelson v. Stalder*, 135 F.Supp.2d 745, 752 (E.D. La. 2001) (holding in case where plaintiff alleged that he was wrongfully detained for 10 months because of failure to properly account for time served in calculating sentence, that "[l]ike the *Jones* plaintiff, Nelson has challenged the fact of his incarceration rather than its conditions.  Thus, Nelson has not alleged the violation of a clearly established Eighth Amendment right."), *rev'd on other grounds*, 31 Fed. Appx. 836 (5th Cir. 2002).

Luna contends in his summary judgment response brief that his Eighth Amendment rights were violated when he was subjected to filthy, unsanitary conditions; he was forced to eat food that had already gone bad; detention officers shouted profane insults at him; other inmates threatened him with physical harm and even death, some of whom were trying to steal his commissary food; he was forced to clean up sewer water coming out of the toilets, without proper gloves, shoes, or boots; and he complained that his shoes and socks were wet

with the filthy, unsanitary water, and the detention officers present just laughed at him and refused to give him a change of socks. But Luna has not pleaded an Eighth Amendment claim based on any of these alleged conditions of confinement. As the court has noted above, Luna has only pleaded an Eighth Amendment claim based on the fact and duration of his confinement. He has not pleaded a claim based on the conditions of his confinement, and, accordingly, he cannot rely on this new claim as a basis to avoid summary judgment. *See, e.g., Barnard v. L-3 Commc'ns Integrated Sys. L.P.*, 2017 WL 3726764, at *4 (N.D. Tex. Aug. 30, 2017) (Fitzwater, J.) ("[A] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (alteration in original) (citations omitted)).

Finally, to the extent Luna argues in his response that defendants violated his Eighth Amendment rights when he requested a "kite" to bring the issue of his continued confinement to the attention of a Jail supervisor, and his request was repeatedly denied,[12] a reasonable jury could not find that the detention officers' conduct in refusing to give Luna a "kite" was "objectively, sufficiently serious," in that it resulted in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotation marks and citation omitted).

Accordingly, the court grants defendants' motion for summary judgment on Luna's

---

[12]Luna has included these allegations in his complaint, although he does not specifically contend that this conduct amounted to a violation of his Eighth Amendment rights.

Eighth Amendment-based § 1983 claim.

D

Defendants move for summary judgment on Luna's Fourteenth Amendment due process claim.

1

To the extent Luna intended to bring a claim for violation of his *substantive* due process rights,[13] the court grants defendants' motion for summary judgment on this claim for the reasons explained in *Mercado v. Dallas County, Texas*, 2016 WL 3166306, at *9 (N.D. Tex. June 7, 2016) (Fitzwater, J.) ("*Mercado I*"),[14] and *Mercado II*, 229 F.Supp.3d at

_____

[13]Although in his complaint Luna alleges violations of his "fundamental rights and liberty interests," Compl. ¶ 39, he does not contend in his response brief that any substantive due process claim can survive defendants' motion for summary judgment.

[14]In *Mercado I* the court dismissed the plaintiffs' § 1983 substantive due process claim based on the policy of Dallas County and Sheriff Valdez of honoring ICE detention requests, and detaining individuals subject to an immigration hold even after they were otherwise cleared for release. The court explained:

> "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright* [*v. Oliver*, 510 U.S. 266, 273 (1994)] (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Plaintiffs' remaining substantive due process claim is based on the allegation that Dallas County honored ICE requests to detain, and detained, individuals subject to immigration holds, even after those individuals were otherwise cleared for release. This is the same factual basis that plaintiffs rely on to support their Fourth Amendment claim. As explained above, the Fourth Amendment protects against "unreasonable

- 16 -

517-18.[15]

_____

> searches and seizures" by the government. It is undisputed that pretrial detention constitutes a "seizure" within the meaning of the Fourth Amendment. Because the Fourth Amendment protects against the type of conduct plaintiffs allege in support of their substantive due process claim, this claim is "covered by" the Fourth Amendment and should be analyzed only under that constitutional provision.

*Mercado I*, 2016 WL 3166306, at *9 (some citations omitted)

[15]In *Mercado II* the court held that plaintiffs' substantive due process claim based on the County's policy of denying them pretrial release on bond was subject to dismissal for the same reasons:

> As in *Mercado I*, however, the factual basis on which plaintiffs rely in support of their due process claim—i.e., that Dallas County denied them the opportunity for pretrial release on bond—is the same factual basis that they rely on to support their Fourth Amendment claim. Plaintiffs allege that the Fourth Amendment prevents arrests and seizures, absent probable cause; that Dallas County must allow an opportunity for pretrial release that satisfies the Fourth Amendment; and that "[i]f Dallas County had allowed bail, Dallas County would have needed to release Plaintiffs if Plaintiffs had paid bail, as Dallas County had no other probable cause to believe that any Plaintiff had committed or was committing criminal activity [.]" *Id.* ¶ 107. Accordingly, the court holds, as it did in *Mercado I*, that "[b]ecause the Fourth Amendment protects against the type of conduct plaintiffs allege in support of their substantive due process claim, this claim is 'covered by' the Fourth Amendment and should be analyzed only under that constitutional provision." *Mercado I*, 2016 WL 3166306, at *9 (citation omitted). The court therefore grants Dallas County's motion to dismiss plaintiffs' substantive due process claim for the reasons explained in *Mercado I* and here.

*Mercado II*, 229 F.Supp.3d at 517-18.

To the extent Luna intended to plead violations of his *procedural* due process rights, the court holds that this claim is barred by the holdings in *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984). In *Martin v. Dallas County, Texas*, 822 F.2d 553, 554 (5th Cir. 1987), the Fifth Circuit addressed a § 1983 claim based on allegations that the plaintiff had been held in jail for 3½ weeks longer than he should have been for a DWI sentence. The panel explained:

> [w]here a state system as a whole provides due process of law, federal constitutional guarantees are not breached merely because some state employee, even a highly-placed one, might engage in tortious conduct, either intentionally or negligently. To avoid such needless federal interference and thereby to preserve the balance between the state and federal courts is the important purpose served by the *Parratt/Hudson* doctrine. Logic and prior precedent of this circuit require that we give *Parratt/Hudson* a reading broad enough to effectuate this important purpose.

*Id.* at 555 (quoting *Holloway v. Walker*, 790 F.2d 1170, 1174 (5th Cir. 1986)). The court concluded that, because Texas law afforded the plaintiff remedies against his illegal detention "both while it was underway and for post-deprivation compensatory relief,"— including habeas corpus relief pursuant to Tex. Crim. Proc. Code Ann. art. 11.01 or tort recovery for false imprisonment—he could not bring a § 1983 claim for violation of his procedural due process rights. *Id.*

Defendants move for summary judgment on Luna's procedural due process claim on the ground that he had other remedies available to him, including, *inter alia*, a writ of *habeas*

*corpus*—a remedy he ultimately used to secure his release—and a suit based on the state tort of false imprisonment. They argue that "[g]iven these several remedies available to [Luna] to secure his own release ('he held the keys to his freedom') or obtain compensation, under the *Parratt/Hudson* doctrine he has no claim actionable under the Fourteenth Amendment." Ds. Br. 10. The court agrees. Although Luna argues in his response that he "made several attempts after his court-ordered release date to obtain his freedom, continuously, verbally requesting Defendants' officers for assistance with his release, to which they responded with indifference," P. Br. 13, he does not contend or adduce any evidence that the procedures available under Texas law (including a writ of *habeas corpus* or a state tort claim for false imprisonment) would not have afforded him an adequate post-deprivation remedy. Accordingly, the court grants defendants' motion for summary judgment on Luna's Fourteenth Amendment procedural due process claim.

IV

Assuming *arguendo* that Luna will be able to prove at trial that his Fourth or Thirteenth Amendment rights were violated in some respect, the court now addresses whether the County can be held liable under § 1983 for Luna's alleged constitutional violations.

A

A county "can be found liable under § 1983 only where the [county] *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694-95 (1978)) (addressing

municipal liability). A county cannot be held liable simply on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Accordingly, to recover against the County under § 1983, Luna must prove: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

The first element requires that Luna prove an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id*. at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id*. (citations, brackets, and some internal quotation marks omitted). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Luna must point to a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir.

2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of the governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Luna prove that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Luna therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will

follow the decision." *Id*. (quoting *Brown*, 520 U.S. at 411); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

## B

Defendants move for summary judgment, *inter alia*, on the grounds that the summary judgment evidence fails to establish any policy, practice, or custom that was maintained or adopted by Sheriff Valdez, as the County's policymaker, with deliberate indifference to the rights of citizens and that was the moving force behind any underlying violation of Luna's constitutional rights. Because Luna has failed to introduce evidence that would enable a reasonable jury to find that his continued detention after his name was mistakenly left off the DMU's April 28, 2015 email was the result of a County policy, practice, or custom, the court grants the County's summary judgment motion in part. But to the extent Luna bases his Fourth Amendment claim on the denial due to the Immigration Detainer of release on bail from April 11 through April 27, 2015, or of release for up to 48 hours after he was sentenced on April 27, 2015, the court denies defendants' motion.

### 1

Defendants contend that there is no written policy that required Luna's continued incarceration; there is no evidence that Sheriff Department training was so cursory and

devoid of thoroughness as to amount to no training at all; there is no evidence of a specific deficiency in the training of DMU employees regarding the input of information into the computers and that such specific deficiency had, prior to April 27, 2015, already caused a pattern of detaining inmates who had served their sentences but were not released to ICE within 48 hours of their discharge from criminal charges; there is no evidence of an "official policy" that directly caused Luna not to be released on or around April 27, 2015, after he served his sentence on the misdemeanor charge; and the evidence establishes that members of the DMU were specifically trained regarding procedures to assure an individual's timely release either to the U.S. Immigration and Naturalization Service ("INS") or from all custody.

Luna responds that the County and Sheriff Valdez had an official policy, practice, or custom of honoring all 48-hour ICE "holds" or "detainer requests" with respect to individuals who, like Luna, were otherwise cleared for release, without requiring probable cause to believe a different criminal offense had been committed to satisfy the Fourth, Fifth, and Fourteenth Amendments. In support, Luna cites the deposition testimony of Chief Hartgraves and DMU Director Jimmy D. Patterson ("Patterson"). Luna maintains that defendants had a policy of not allowing inmates who, like Luna, were the subject of an ICE hold to be released on bond. He also contends that the evidence shows that defendants had a policy, practice, or custom of holding detainees with ICE detainers beyond the 48 hours requested by the ICE hold. Luna cites evidence that, during his three-month confinement, he repeatedly asked officers working in the Jail when he would be released, and they told him

that he was being held because of an immigration detainer and that he would be transferred to the custody of ICE "sometime in the future." P. Br. 15. Luna posits that "[t]he fact that [he] was consistently told this by several detention officers on numerous occasions provides some evidence of a persistent and widespread custom on the part of the Defendants." *Id.*[16]

2

Defendants do not appear to dispute that the County had a policy or custom of refusing to release on bond any inmate for whom an immigration detainer had been issued.[17] Nor do they move for summary judgment on the ground that Luna cannot prove that an official policymaker can be charged with actual or constructive knowledge of this policy or that this policy was the "moving force" behind Luna's alleged constitutional deprivation. Defendants do, however, specifically dispute that there was any policy "which was the direct cause of Luna not being released on or about April 27, 2015, after he served his time on the misdemeanor charge." Ds. Br. 13.

The court agrees that Luna has failed to adduce any evidence that would enable a

---

[16]In response to defendants' summary judgment motion, Luna does not contend that the County had a policy of failing "to adequately train and monitor its employees to comply with the law regarding the release of detainees who have served their sentences," as he alleges in his complaint. Compl ¶ 35.

[17]In their reply, defendants contend only that Luna does not offer any evidence that Sheriff Valdez or the County denied him bail. They do not dispute Chief Hartgraves' testimony that an inmate for whom an ICE hold had been issued would not be released on bond. Based on this apparently undisputed evidence, a reasonable jury could find that the County had a policy of not releasing on bond any inmate against whom an immigration detainer had been issued.

reasonable jury to find that the County had a policy or custom of detaining individuals subject to an immigration detainer *beyond the 48 hours requested in the detainer itself.* In support of his contention that defendants had a policy, practice, or custom of holding detainees with an ICE detainer request beyond the 48 hours requested by the ICE hold, Luna alleges:

> During the three-month period following the expiration of the 48-hour ICE detainer, repeatedly and continuously, the Dallas County Sheriff's officers in the jail told Mr. Luna that he was being held "because of an immigration detainer," and that he would "be transferred to the custody of ICE sometime in the future." The fact that Mr. Luna was consistently told this by several detention officers on numerous occasions provides some evidence of a persistent and widespread custom on the part of the Defendants.

P. Br. 15 (citation omitted). The court disagrees. Accepting as true Luna's description of what he was told by the detention officers in the Jail, he has failed to point to any evidence that any other detainee against whom an ICE detainer had been filed was held beyond the 48 hours requested in the detainer. To conclude that the County had a "persistent and widespread custom" of detaining individuals with immigration holds beyond the requested 48 hours, based solely on comments made by detention officers that Luna was being held because of an immigration detainer and would be released sometime in the future, would require too great an inferential leap, even at the summary judgment stage. *See, e.g., Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429

(5th Cir. 1996))).

Based on the summary judgment evidence, however, a reasonable jury *could* find that the County had a policy or custom of honoring ICE immigration detainers requesting that individuals be detained for up to 48 hours after they were otherwise eligible for release. For example,[18] DMU Director Patterson testified:

> the policy at the Dallas Sheriff's Office is to comply with detainers received from the, you know, government. And the Dallas County Sheriff's Office since I've been here until to the very best of my knowledge in the past has never refused a detainer, a request of a detainer from the . . . government. . . . [T]he [Dallas Sheriff's Office] has always taken . . . the position that the ICE request is . . . made from the federal government. We comply with those.

P. App. 13-14. And the subject line for the April 28, 2015 email that defendants contend *should have* included Luna states, "I[CE] pick up list for 04/29/15," Ds. App. 18, indicating that Luna was to be picked up by ICE agents by April 29, 2015, i.e., 48 hours after he pleaded guilty, was sentenced to time served, and was otherwise eligible for release. The evidence is also sufficient to enable a reasonable jury to find that the County's policy or custom of honoring federal immigration detainers was the "moving force" behind Luna's alleged Fourth Amendment deprivation.[19] For example, although the court does not suggest

---

[18]As stated above, "[w]hen this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho*, 658 F.Supp.2d at 812 n.8 (citing *Swicegood*, 2003 WL 22234928, at *17 n.25).

[19]Defendants do not move for summary judgment on the ground that Sheriff Valdez is not an official policymaker with "final policymaking authority." *Rivera*, 349 F.3d at 247 (citing *City of St. Louis*, 485 U.S. at 127).

that Luna has established that he was detained for an additional *48 hours* after he was otherwise eligible for release solely on the basis of the Immigration Detainer, there is sufficient evidence to permit the reasonable finding that, due to the Immigration Detainer, Luna was detained for at least some period of time after he was otherwise eligible for release. *See, e.g.,* Ds. App. 15-17 (April 28, 2015 email listing Luna as ready for release to "U.S. Immigration/Detainee" when Luna was sentenced to time served on April 27, 2015).

Accordingly, the court grants defendants' motion for summary judgment on Luna's § 1983 Fourth Amendment claim against the County to the extent Luna bases this claim on an alleged policy or practice of detaining individuals subject to an immigration detainer beyond the 48 hours requested in the detainer itself. The court otherwise denies defendants' motion for summary judgment on this claim.

---

In their brief, defendants focus on the alleged lack of training as the policy that resulted in Luna's constitutional deprivations. Accordingly, they do not specifically argue that the County's policy of honoring federal immigration detainers was not the "moving force" behind the alleged violation of Luna's Fourth Amendment rights. Although they argue in their reply that Luna "fails to offer any evidence supporting his conclusory allegation that the 48-hour ICE detainer hold period was the moving force for Plaintiff's initial lawful detention and/or continuing unlawful detention," Ds. Reply 8, this argument has not been properly raised. *See, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citing *Senior Unsecured Creditors' Comm. of First Republic Bank Corp. v. FDIC*, 749 F.Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008). Nonetheless, the court concludes that the summary judgment evidence *is* sufficient to permit a reasonable jury to find that the County's alleged policy of honoring federal immigration detainers was the moving force behind the alleged deprivation of Luna's Fourth Amendment rights, and, accordingly, denies defendants' motion for summary judgment on Luna's § 1983 Fourth Amendment claim based on his being detained based on the Immigration Detainer for up to 48 hours after he was otherwise eligible for release.

C

The court also grants summary judgment on Luna's Thirteenth Amendment-based § 1983 claim against the County. The Thirteenth Amendment prohibits "involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted." U.S. Const. amend. XIII.

To the extent Luna contends that his Thirteenth Amendment rights were violated when he was forced to work during the period of time commencing when he began to be detained as a result of DMU's clerical mistake (as opposed to the Immigration Detainer) and concluding on August 7, 2015, the court holds for the reasons explained above, *see supra* § IV(B), that Luna has failed to adduce any evidence that he was detained during that period pursuant to an official policy, practice, or custom. In other words, even assuming *arguendo* that Luna has adduced evidence sufficient to permit a reasonable jury to find that his Thirteenth Amendment rights were violated during the time when he was detained as a result of the clerical mistake, he has failed to point to any official policy that was the moving force behind his continued incarceration and the violation of his Thirteenth Amendment rights that allegedly resulted from that continued confinement.

To the extent Luna contends he was forced to work when he was a pretrial detainee or during the period of time after he pleaded guilty and was being detained solely on the basis of the Immigration Detainer,[20] Luna has neither argued nor adduced evidence that the County

---

[20]*See* P. App. 2 (Luna's affidavit stating "I was placed in the 'Trusty' work program from the day I arrived at the jail.").

had a policy, practice, or custom of forcing pretrial detainees or inmates who were being held subject to an Immigration Detainer, but who were otherwise eligible for release, to work in its trusty program. Accordingly, the court grants defendants' motion for summary judgment on Luna's Thirteenth Amendment-based § 1983 claim.

V

Defendants move for summary judgment based on qualified immunity as to Luna's claims against Sheriff Valdez individually.

A

Qualified immunity jurisprudence is well settled. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (some internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).

"To decide whether [a] defendant[] [is] entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[]

as the part[y] asserting the injuries, the facts [he has] alleged show that defendant['s] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.")).[21] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* Finally, "[e]ven if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (en banc)). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable

---

[21]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 242.

unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

When qualified immunity has been raised at the summary judgment stage, "[t]he moving party is not required to meet [her] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Rather, the movant need only plead her good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id.* (emphasis and citation omitted); *see also Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when government official pleads qualified immunity, plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct"). Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

B

Defendants move for summary judgment on Luna's claims against Sheriff Valdez on the basis of qualified immunity, arguing that there is no evidence that Sheriff Valdez failed to train the subordinate employee whose clerical error resulted in Luna's prolonged

incarceration and that there is no evidence that Sheriff Valdez's conduct was "objectively unreasonable."

Luna responds that Sheriff Valdez is not entitled to qualified immunity because she violated Luna's constitutional rights and her actions were objectively unreasonable in light of clearly-established law at the time of the conduct in question. Luna contends that Sheriff Valdez was in control of, and consistently involved in, the oversight, development, and implementation of the County's ICE detainer policies, and a direct causal link exists between such policies, practices, and customs and the violation of Luna's constitutional rights under the Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments; that the testimony of defendants' employees establishes that defendants honor *all* ICE detainers, regardless of their basis or the lack of probable cause; that Luna has adduced evidence that he was being held throughout the entire period due to an ICE hold, providing the direct causal link between defendants' policies, practices, and customs and the violation of Luna's constitutional rights; that the law was clearly established that to hold Luna after he had been cleared for release required that defendants have probable cause to believe Luna had committed another crime, and the ICE detainer did not give defendants the required probable cause; and that Sheriff Valdez's own "draft" letter to Governor Abbot demonstrates her own doubts about the reasonableness and legality of her ICE detainer policy at the time in question.

## C

To the extent Luna contends that his Fourth or Thirteenth Amendment rights were violated when he was detained for a period of several months after the DMU clerk

- 32 -

mistakenly left his name off of the ICE pick-up list for April 29, 2015, Luna has not presented any evidence that would permit a reasonable jury to find that Sheriff Valdez can be held liable for the clerical mistake that resulted in Luna's continued incarceration.

Supervisory officials cannot be held liable under § 1983 for the actions of their subordinates under any theory of vicarious liability. *Thompson*, 245 F.3d at 459 (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). When, as here, a plaintiff alleges that a supervisory official failed to train or supervise, he must prove that "(1) the supervisor either failed to supervise or train the subordinate officer[,] (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference" to the constitutional right allegedly violated. *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017); *see also Walker v. Upshaw*, 515 Fed. Appx. 334, 339 (5th Cir. 2013) (per curiam); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452-53 (5th Cir. 1994) (en banc).

"[D]eliberate indifference is a stringent standard of fault," requiring proof that the supervisory officer "disregarded a known or obvious consequence of his action." *Walker*, 515 Fed. Appx. at 339 (quoting *Estate of Davis*, 406 F.3d at 381). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Estate of Davis*, 406 F.3d at 381 (quoting *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)). "Proof of more than a single instance of the lack of training or supervision causing a

violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson*, 245 F.3d at 459 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998)). "The plaintiff must generally demonstrate at least a pattern of similar violations . . . [and] the inadequacy of training must be obvious and obviously likely to result in a constitutional violation." *Id*. A plaintiff can, however, "demonstrate liability based on a single incident if the constitutional violation was the highly predictable consequence of a particular failure to train. *Davidson*, 848 F.3d at 397 (citation and internal quotation marks omitted); *see also Valle*, 613 F.3d at 549.

Luna does not dispute defendants' evidence that he was detained well beyond the 48 hours requested in the Immigration Detainer because of a clerical error. *See* Ds. App. 4 (County records stating that Luna "was not released in the 48 hour time frame due to the inmate not being put on the INS pickup list."). Defendants move for summary judgment on Luna's § 1983 claims against Sheriff Valdez on this basis:

> no evidence establishes that there is a specific deficiency in the training of DMU employees with regard to the input of information into the computers and that such specific deficiency had, prior to April 27, 2015, already caused a pattern of detaining inmates who had served their sentences, but were not release[d] to ICE within 48 hours of their discharge from criminal charges.

Ds. Br. 13. Although Luna alleges in his complaint that "[d]efendants failed to adequately train and monitor [their] employees to comply with the law regarding the release of detainees who have served their sentences, and as a result of the ignorance or inadequate training of the employees, Plaintiff was deprived of his Constitutional rights," Compl. ¶ 35, he has not

adduced any summary judgment evidence that would enable a reasonable jury to find that Sheriff Valdez failed to supervise or train the DMU clerk who mistakenly omitted Luna's name from the INS transfer list, that there was a causal link between the failure to train or supervise and the violation of Luna's rights, or that the failure to train or supervise amounted to deliberate indifference. Accordingly, to the extent Luna asserts against Sheriff Valdez his § 1983 claims based on his incarceration after his sentence had been served and he was mistakenly left off the ICE pick up list, the court holds that Sheriff Valdez is entitled to summary judgment based on qualified immunity.

D

The court concludes that, with respect to Luna's § 1983 claims against Sheriff Valdez based on the County's alleged policy of refusing to release on bail inmates with an immigration hold, or on the County's alleged policy of holding inmates with an immigration hold for 48 hours after they were otherwise eligible for release, Luna has failed to present evidence that would enable a reasonable jury to find that Sheriff Valdez's conduct was objectively unreasonable in light of Luna's clearly established constitutional rights.

1

Under the second prong of the qualified immunity analysis,[22] courts consider "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008); *see also Wood*

_____

[22]Under *Pearson*, 555 U.S. at 236, the court may consider the second *Saucier* prong first.

*v. Moss*, ___U.S.___, 134 S.Ct. 2056, 2067 (2014) ("The dispositive inquiry, we have said, is whether it would have been clear to a reasonable officer in the [defendant's] position that [his] conduct was unlawful in the situation [he] confronted." (internal quotation marks and brackets omitted) (quoting *Saucier*, 533 U.S. at 202)); *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir. 2004) (per curiam) ("The court must first identify the relevant clearly established law [and t]hen . . . determine whether the defendant's actions were objectively reasonable." (citing *Petta v. Rivera*, 133 F.3d 330, 334 (5th Cir. 1998))).  To make this determination, the court must

> ask whether the law so clearly and unambiguously prohibited [the defendant's] conduct that every reasonable official would understand that what he is doing violates the law.  To answer that question in the affirmative, [the court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.

*Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (brackets and internal quotation marks omitted) (quoting *al-Kidd*, 563 U.S. at 741).  Although "a case directly on point" is not required for the court to conclude that the law is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see also Vincent v. City of Sulphur*, 805 F.3d 543, 549 (5th Cir. 2015) (holding that "two out-of-circuit cases and a state-court intermediate appellate decision hardly constitute persuasive authority adequate to qualify as clearly established law sufficient to defeat qualified immunity in this circuit.").  Moreover, a court may not "'define clearly established law at a high level of generality,' since doing so avoids the crucial question

whether the official acted reasonably in the particular circumstances that he or she faced."

*Plumhoff v. Rickard*, ___ U.S. ___, 134 S.Ct. 2012, 2023 (2014) (quoting *al-Kidd*, 563 U.S.

at 742).  The Fifth Circuit has explained that "[t]he central concept is that of 'fair warning':

The law can be clearly established 'despite notable factual distinctions between the

precedents relied on and the cases then before the Court, so long as the prior decisions gave

reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v.*

*Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730,

740 (2002)).

2

Luna has failed to meet his summary judgment burden with respect to the second

prong of Sheriff Valdez's qualified immunity defense.  In his response brief, Luna contends

that "there can be no dispute that the extant jurisprudence at the time in question required the

Defendants to have probable cause to believe Mr. Luna had committed another crime, which

the Defendants did not have.  The ICE detainer did not give the Defendants that required

probable cause."  P. Br. 21.  But the only authority Luna cites is *Mercado II*, which post-

dates Luna's period of confinement by more than a year and a half.[23]  Luna does not point

to any controlling authority (or to a "robust consensus of persuasive authority") that would

establish the following critical element: that *at the time Luna was detained pursuant to the*

---

[23]Luna's reliance on Sheriff Valdez's "draft" letter to Governor Abbot as "demonstrat[ing] her own doubts about the reasonableness and legality of her ICE detainer policy at the time in question," P. Br. 21, is also misplaced, since the draft is dated October 27, 2015 (six months after Luna was sentenced to time served).

- 37 -

*Immigration Detainer*, all reasonable officials in Sheriff Valdez's position would have known that honoring federal immigration detainers by denying pretrial release to detainees with immigration holds, or by holding inmates subject to ICE detainers for up to 48 hours after they were otherwise eligible for release, resulted in a clear violation of Luna's constitutional rights under the circumstances. For example, in holding in *Mercado II* that 8 C.F.R. § 287.7(d) does not mandate that local law enforcement detain persons who are subject to detainers, it was necessary for this court to piece together out-of-circuit authority, relying on *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014), and the decisions of several district courts that agreed with *Galarza*. The court specifically noted that "the Fifth Circuit has not yet addressed the issue." *Mercado II*, 229 F.Supp.3d at 514. And the court held that, "[a]bsent Fifth Circuit authority to the contrary, [it would] follow *Galarza* and the district courts that rel[ied] on its reasoning or otherwise reach[ed] the same result." *Id.* The law does not require that, to be entitled to qualified immunity, reasonable officials accurately predict how the court might decide a new legal issue. *See al-Kidd*, 563 U.S. at 741; *Vincent*, 805 F.3d at 549; *Morgan*, 659 F.3d at 371-72. Accordingly, under the second step of the qualified immunity analysis, the court holds that Sheriff Valdez is entitled to qualified immunity with respect to Luna's § 1983 claims asserted against her.

\*   \*   \*

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Luna's Fourth Amendment claim against the County based on his pretrial detention from April 11, 2015 through April 27, 2015, and his post-sentence

detention for up to 48 hours beginning on April 27, 2015 after he was otherwise eligible for release, remains for trial. All other claims against the County, including his Fourth Amendment claim based on being detained from April 29, 2015 through August 7, 2015 due to the DMU clerical mistake, are dismissed. Luna's action against Sheriff Valdez is dismissed in its entirety by Rule 54(b) final judgment filed today.

      **SO ORDERED**.

      February 2, 2018.


                                    SIDNEY A. FITZWATER
                                    UNITED STATES DISTRICT JUDGE